IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EVAN KNOX, #441566, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 3:15-cv-01498 |
| SHAWN PHILLIPS, Warden, | ) ) Judge Campbell |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Petitioner Evan Knox, a state prisoner incarcerated at South Central Correctional Facility in Clifton, Tennessee, has filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus (ECF No. 1), along with a supporting Memorandum, challenging his 2012 conviction in the Criminal Court for Davidson County, Tennessee.

The petition is ripe for review. For the reasons set forth herein, the petition will be denied and this action dismissed.

**I.      PROCEDURAL BACKGROUND**

In September 2011, the petitioner was indicted on charges of first-degree murder (count one) and use of a firearm during the commission of a dangerous felony (count two). (Indictment, ECF No. 16-1, at 3–6.) On August 20, 2012, the petitioner entered a guilty plea on count one to the lesser-included offense of second-degree murder and, as part of a negotiated plea deal, agreed to an out-of-range sentence of 30 years at 100% in exchange for the state's dismissal of count two. The plea petition notes that the statutory range for a second-degree murder conviction is 15 to 25 years and that a conviction on the firearm charge would have entailed a mandatory 10-year consecutive sentence. (ECF No. 16-1, at 8–9.) The trial court accepted the plea after a hearing conducted on August 21, 2012 and entered judgment the same day. (Judgments, ECF No. 16-1, at 7.) The judgment likewise noted on its face that the plea was "out of range pursuant to St[ate] v. Hicks." (*Id.*)

The petitioner did not pursue a direct appeal, but he did file a timely *pro se* petition in the state court for post-conviction relief on May 1, 2013. (ECF No. 16-1, at 12–18.) The trial court appointed post-conviction

counsel, who filed an amended petition. (ECF No. 16-1, at 24–30.) The trial court conducted a hearing on November 13, 2012 (*see* Post-Conviction Hr'g Tr., ECF No. 16-2) and denied the petition. (Order, ECF No. 16-1, at 34–47.) The Tennessee Court of Criminal Appeals affirmed that decision. *Knox v. State*, No. M2014-01104-CCA-R3-PC, 2015 WL 3396811 (Tenn. Ct. Crim. App. May 27, 2015). The Tennessee Supreme Court denied review on September 17, 2015.

The petitioner filed his *pro se* federal habeas corpus petition under 28 U.S.C. § 2254 in this Court on December 14, 2015. The respondent has filed an answer along with a complete copy of the underlying state-court record. The petition is timely, and this Court has jurisdiction.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals set forth the following facts pertaining both to the plea proceedings and the factual basis for the plea:

> On August 21, 2012, Defendant entered a guilty plea to the lesser-included offense of second degree murder. At the plea submission hearing, the trial court asked Petitioner if his trial counsel had explained to Petitioner that he was "agreeing to a thirty-year sentence, which is a little higher than the range [and that] Count 2 [was] being dismissed." The trial court also asked Petitioner if he understood that he was pleading guilty to a lesser-included offense of the charged offense. Petitioner answered affirmatively. The following exchange occurred:
>
>> THE COURT: . . . . I now have a petition that tells me you want to enter a plea to a lesser offense of murder in the second degree, which is a knowing killing of another individual. It's going to be a thirty-year sentence at a hundred percent because the law requires that murder in the second degree be served at a hundred percent. Now, though it is a—when we're talking about—you're kind of pleading out of range. What that means is if you had gone to trial and been convicted of murder in the second degree as a lesser offense, your range of punishment would have been fifteen to twenty-five years. But in order to kind of arrange this agreement you've agreed to go up to thirty years just so that you would get convicted of murder in the second degree. Did you understand that?
>>
>> [PETITIONER]: Yes, ma'am.
>>
>> THE COURT: Okay. So it's a little higher punishment than you would have gotten if you would have been convicted of murder in the second degree. But at the same time it's not being convicted of murder in the first degree.
>
> The trial court further explained that Petitioner's other charge would be dismissed and that if he was convicted of the second charge at trial, it carried a sentence of ten years. The trial court asked Petitioner,
>
>> Now, have you thoroughly discussed everything about your case with [trial counsel]? By that I mean have you gone over all the discovery in this case, any defenses you might have if you had any, or any witnesses that you might call to [testify at] trial. I just want to make sure you've thoroughly

>     discussed everything about your case.
> 
> Petitioner answered affirmatively. Petitioner stated that he could read and that he had started his freshman year in college. He stated that he and trial counsel had read the plea agreement together. The trial court asked if Petitioner had any questions about the plea agreement, and Petitioner asked about a prior five-year sentence. The trial court explained that his sentence in this case would run consecutively to that sentence, and the trial court explained Petitioner's jail credits.
> 
> The trial court asked Petitioner if he had "any difficulty understanding what [he was] doing," and Petitioner replied, "No, ma'am." The trial court asked, "Do you understand, [Petitioner], you don't have to plead guilty? You have a right to go to trial. It's set for trial, and we're ready to go. And you can go to trial if you want to. Do you understand that?" Petitioner answered affirmatively. The trial court asked if Petitioner was satisfied with trial counsel's services, and Petitioner answered, "Absolutely." The trial court explained the rights that Petitioner was waiving by pleading guilty. The trial court asked if Petitioner wanted to waive his rights and enter a guilty plea, and Petitioner responded affirmatively.
> 
> The State gave the following factual basis for Petitioner's plea:
> 
> > [O]n 5-30-11 at 626 Charles E. Davis Boulevard in Nashville, Davidson County the defendant was identified by two to three persons as a person who shot Antonio Rutledge, Thomas Rutledge, multiple times as he was driving a four-wheel vehicle through the—through the neighborhood. The State would introduce those witnesses as well as the statement the defendant made to detectives in Portland, Oregon, where he went after that.
> >
> > [Trial counsel] has—we've given [trial counsel] everything we have. He's gone over with his client, I'm sure, everything we were in possession of, including the interviews with the persons and the detective, detectives' reports and interview from the detectives in Oregon. Had the case gone to trial Monday we were certainly on the same page. The ballistics report from the TBI showed that each—each of the shell casings at the scene was from the same weapon. And that would be introduced on Monday, and that would be the State's proof.

*Knox*, 2015 WL 3396811, at *1–2 (alterations in original).

The Tennessee Court of Criminal Appeals summarized the evidence presented at the post-conviction hearing as follows:

> At the post-conviction hearing, Petitioner testified that he discussed the State's plea offer with his trial counsel and that he understood that he would receive a sentence of thirty years in exchange for his guilty plea. Petitioner testified that counsel did not discuss with him his status as a Range I offender. Petitioner testified that counsel "just told [him he] was pleading out of [his] range. That was it." Petitioner testified that trial counsel did not advise him that the sentencing range for second degree murder was 15 to 25 years. Petitioner acknowledged that he told the trial court at his plea acceptance hearing that he understood the possible range of punishment and that he was being sentenced outside of his range. He testified that trial counsel advised him to "just say yes to everything." He testified, "I was just going with what my lawyer, you know, under the advisement of my lawyer." Petitioner testified that trial counsel advised him "to take this deal or [he was] going to get life." Petitioner testified that he believed he was "forced" to accept the State's plea offer. He testified, "it's either this or I'm going to get life."

On cross-examination, Petitioner acknowledged that one witness identified him as the perpetrator during Petitioner's preliminary hearing. Petitioner testified that he understood the charges against him. He testified that he understood that he could have received a life sentence if he had been convicted as charged at a trial. Petitioner testified, "I was ready to go to trial. . . . I took the deal two days prior to going to trial. I wanted to go to trial."

Petitioner testified that he understood that he had a right to a jury trial and that trial counsel discussed with him the State's proof against him. Petitioner testified that he did not receive a "layout of the neighborhood" to use in order to "show where the State's witnesses w[ere] telling lies[.]" He also asked trial counsel to request a continuance so that he could locate more witnesses, and trial counsel told him the trial could not be continued. Petitioner acknowledged that he stated during the plea acceptance hearing that he was satisfied with counsel's services. Petitioner testified that he "relied on [counsel's] advice" to "[j]ust say yes to everything."

Regarding his guilty plea and sentence, Petitioner testified:

> I went on [trial counsel's] advice. Had I been explained that the sentencing range and the guidelines and all that is part bargaining tools, I wouldn't have took [sic] no deal pleading out of no range. Five more years for a second degree murder—like the most time I could have got was a twenty-five. Why would—anybody with common sense would see I would not take five more years.

Petitioner testified that he had signed the plea agreement on the day prior to entering his guilty plea. He testified that during the plea submission hearing, he thought that "it was already really just locked in." He testified, "I didn't know I could have just said, no, exclude everything now, it's over with, and we're going to go on and go to trial."

Trial counsel testified that he had been licensed to practice law in Tennessee for approximately ten years. Trial counsel's practice consisted primarily of criminal defense cases. Trial counsel was appointed to represent Petitioner after Petitioner's arraignment. Trial counsel obtained the services of a private investigator to assist with Petitioner's case. Trial counsel described Petitioner as "very articulate" and testified that Petitioner "communicated with [him] in writing quite often and, in fact, about legal principles and certain things that [Petitioner] and [trial counsel] had quite a bit of discussions about[.]" Trial counsel reviewed discovery with Petitioner, including Petitioner's statement to police and the layout of the neighborhood where the offense occurred. Trial counsel believed that Petitioner "thoroughly understood" the possible defenses in his case and the possible outcomes. Trial counsel testified that he told Petitioner that he believed the "likelihood of conviction was extremely high."

Trial counsel testified that he explained to Petitioner that his sentence was out-of-range, and Petitioner "understood that that was the bargain." The State initially offered Petitioner a sentence of forty years. Trial counsel testified that he reviewed the plea agreement with Petitioner on the day prior to Petitioner's plea submission hearing. Trial counsel testified that he was prepared for trial. Trial counsel testified that he did not advise Petitioner to answer affirmatively to all of the trial court's questions at the plea submission hearing. Trial counsel's advice to Petitioner was "not to just say yes to everything, it was when you address the Court you say, yes, ma'am and no, ma'am and the district attorney as yes, sir and no, sir."

*Knox*, 2015 WL 3396811, at *2–3 (some alterations in original).

### III. ISSUES PRESENTED FOR REVIEW

The petitioner presents the following claims for review in this Court:

(1) that he was deprived of his Sixth Amendment right to the effective assistance of counsel;

(2) that the plea was not knowing and voluntary;

(3) that the petitioner's sentence is illegal;

(4) that petitioner was denied the effective assistance of post-conviction counsel.

The petitioner also argues generally under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), that the default of any of his claims should be excused by the ineffective assistance of post-conviction counsel.

## IV.    STANDARD OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court is barred from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has emphasized repeatedly that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," then relief is precluded under that provision. *Id.* at 101 (internal quotation marks and citation omitted). The Court admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks and citation omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. This is a very

high standard, which the Supreme Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

## V. EXHAUSTION AND PROCEDURAL DEFAULT

In addition to § 2254(d)'s limitations on the review of claims that *were* adjudicated on the merits in the state courts, AEDPA generally precludes habeas review altogether of claims that were not properly exhausted in the state courts or were procedurally barred by the state courts, except in very limited circumstances.

### A. Exhaustion

Section 2254(b)(1) provides that a federal court may not award habeas relief to an applicant in state custody "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Exhaustion occurs once a petitioner has "give[n] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot entertain the merits of the claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).[1]

When a habeas court finds a claim to be unexhausted, it can, for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of his perfected petition. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The court need not wait for exhaustion, however, if it determines that a return to state court would be futile. *See id.* ("[E]ven if a petitioner had good cause for that failure [to exhaust claims in state court], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

### B. Procedural Default

---

[1] In Tennessee, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

Even where a state prisoner has exhausted available state-court remedies, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In addition, if a petitioner failed to fairly present a particular federal habeas claim to the state courts but has no remaining avenue available for doing so under state law, then the claim is deemed to be exhausted but procedurally defaulted. *Boerckel*, 526 U.S. at 848; *Rust v. Zent*, 17 F.3d at 160.

If a prisoner defaulted a federal claim in state court, review by the federal court is completely barred unless the petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error, or (2) "failure to consider the claim would result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner can establish the requisite "cause" in two ways. First, a petitioner may "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* Second, constitutionally ineffective assistance of counsel constitutes cause. *Murray*, 477 U.S. at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective-assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id.* If the ineffective-assistance claim was not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective-assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Until recently, a prisoner could not demonstrate cause for default by claiming that he received ineffective assistance of counsel during state post-conviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1992) (holding that post-conviction attorney error was not cause to excuse a default under the circumstances presented there). The holding in *Coleman* was based on the premise that an individual does not have a constitutional right to counsel in post-conviction proceedings, so the prisoner "must bear the risk of attorney error that results in a procedural default." *Id.* (internal quotations omitted).

Recent changes in the law, however, have enabled petitioners in Tennessee to establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance of trial counsel by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial-review post-conviction proceedings. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315, 1320 (2012) (creating exception to *Coleman* where state law prohibits ineffective-assistance claims on direct appeal); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* applies in Tennessee).

The Supreme Court's creation in *Martinez* of a narrow exception to the procedural-default bar stemmed from its recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 132 S. Ct. at 1318. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id.* at 1318–19, 1320. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*, 501 U.S. at 750.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his *actual and substantial disadvantage.*" *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause-and-prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court has also recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496). This too is a very demanding standard, and not every claim of innocence will lead to review of a defaulted claim.

With these principles in mind, the Court turns to the examination of the claims raised in the petition for habeas relief.

## V.     ANALYSIS AND DISCUSSION

### A.     Fully Exhausted Claims of Ineffective Assistance of Counsel

The petitioner asserts that trial counsel (1) "failed to thoroughly explain the plea bargain process (i.e., sentence ranges, guideline, and how all above stated are a part of bargain tools" (ECF No. 1, at 5), namely, that the 30-year sentence to which he agreed as part of the plea bargain was outside the maximum range that would have applied if he had been found guilty by a jury of second-degree murder; (2) failed to advise the petitioner that if he did not want to take the deal, even after he had already signed the plea petition, "if I didn't want to take the deal after I'd already signed, that we could've proceed[ed] to trial" (*id.*);(3) failed to provide all discovery, including "panoscan images" (*id.*) and DVDs of a state witness's and the petitioner's statements to Oregon detectives; and (4) failed to prepare a "sound defense" (*id.*). These claims were exhausted in the petitioner's state post-conviction proceedings.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In the case at bar, the state court, in addressing the petitioner's ineffective-assistance claims, correctly articulated the standard established by *Strickland* and discussed at some length the proof necessary to establish both prongs of the *Strickland* test. It then summarized the evidence in the record, reviewed the trial court's decision denying post-conviction relief, and concluded, in light of the post-conviction court's decision

to credit trial counsel's testimony instead of the petitioner's, that the petitioner had not established either that his counsel was ineffective or that he was prejudiced by any alleged deficiency. The appellate court ruled as follows:

> Following the evidentiary hearing, in a written order denying relief, the post-conviction court concluded that Petitioner had failed to prove by clear and convincing evidence that trial counsel's performance was deficient or that Petitioner was prejudiced by any alleged deficiency. . . . The post-conviction court found, in part,
>
>> Petitioner's primary complaint is he did not realize that the jury had the option of acquitting him of the charges. Petitioner, however, agreed that after rejecting the initial 40[-]year plea offer, he elected to enter a plea for a 30-year sentence. He felt like his "back [was] against the wall" because he did not like his choices of either proceeding to trial where if convicted he would be sentenced to life or taking a 30-year sentence. Nonetheless, Petitioner realized it was his choice to enter the plea.
>>
>> . . . .
>>
>> Petitioner admitted he made a choice to accept the plea although he did not like his two options: go to trial with [a] likelihood of conviction resulting in a life sentence or pleading guilty for 30 years.
>
> The post-conviction court specifically accredited the testimony of trial counsel. The court noted that the guilty plea transcript revealed that the trial court advised Petitioner that a 30-year sentence was "higher than the range" and that "had [Petitioner] gone to trial and been convicted of murder in the second degree as a lesser offense, [his] range would have been fifteen to twenty-five years." The post-conviction court found that "Petitioner was engaged during the plea colloquy. He did not merely answer questions simply with 'yes' or 'no' but provided appropriate responses." The court also found that "Petitioner responded with an unqualified, 'absolutely'" when asked by the trial court if Petitioner was satisfied with his trial counsel. Finally, the post-conviction court concluded, "[a] review of the record including the guilty plea hearing [Ex. 1] affirmatively demonstrates that the petitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily and knowingly entered."
>
> We conclude that the evidence does not preponderate against the post-conviction court's findings and conclusions. The transcript of the plea submission hearing shows that the trial court explicitly told Petitioner that his 30-year sentence was out-of-range and that if he had been convicted at trial of second degree murder, the applicable sentencing range would have been 15 to 25 years. At the post-conviction hearing, Petitioner testified that trial counsel discussed with him the charges against him. Trial counsel testified, and Petitioner acknowledged, that trial counsel discussed with Petitioner the evidence against Petitioner. Petitioner understood that pursuant to the plea agreement he would receive an out-of-range sentence of 30 years. Petitioner testified that he understood he could have received a life sentence if convicted of first degree murder. At the plea hearing, Petitioner indicated that he understood what he was doing, and he gave appropriate responses to the trial court's questions, contradictory to Petitioner's testimony that he gave canned responses to all of the court's questions because trial counsel had advised him to "just say 'yes' to everything." Petitioner has failed to establish that trial counsel provided ineffective assistance or that Petitioner's guilty plea was unknowingly or involuntarily entered.

*Knox*, 2015 WL 3396811, at *4–5.

-10-

This Court is not in a position to second-guess the post-conviction court's decision to credit the testimony of trial counsel over that of the petitioner at the hearing, and the evidence in the record clearly supported the appellate court's decision that the petitioner was not entitled to relief. In short, the decision regarding the petitioner's claims of ineffective assistance was not "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings" and it did not involve an unreasonable application of clearly established federal law. 28 U.S.C. §2254(d). The petitioner is not entitled to relief on the basis of his claim of ineffective assistance of counsel.

### B. Voluntariness of the Plea

The petitioner also raises a free-standing claim that his plea was not knowing and voluntary. This claim is intertwined with the petitioner's claim that his attorney was ineffective for failing to ensure that the plea was knowing and voluntary, but the state courts nonetheless acknowledged it as a separate claim. The court articulated the appropriate federal standards governing such a claim, and concluded based on the factual record that the petitioner failed to establish that his plea was not knowing and voluntary. The court stated:

> Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:
>
>> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.
>
> *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

*Knox*, 2015 WL 3396811, at *4. Then, based on the same facts set forth by the court as noted above, the court concluded that the petitioner had clearly been advised of the consequences of pleading guilty and that his plea was knowing and voluntary.

Again, the underlying record clearly reflects that the petitioner understood what he was doing when he pleaded guilty. The state-court's rejection of his claim that the plea was not knowing and voluntary was not

"based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings" and it did not involve an unreasonable application of clearly established federal law. 28 U.S.C. §2254(d). The petitioner is not entitled to relief on the basis of this claim.

### C.     Illegal Sentence – Computation of Sentence

The petitioner asserts that his sentence was illegal because his thirty-year sentence is to run consecutively to the sentence in Case No. 2008-B-1049 which, he claims, has already expired. The exhibits he attached to his petition in support of this claim, however, concern the computation of pretrial jail credits. Initially, he received jail credits from 3/29/11 up until 8/21/12, the date of sentencing. (*See* Judgment, ECF No. 16-1, at 7.) The post-conviction judge noted in an order entered on May 23, 2014 that the petitioner's

> jail credit had been entered inaccurately, dating back to the offense date. The date listed on the form is the date provided by Petitioner during the plea colloquy; however, since Petitioner's sentence was ordered to be consecutive to his other sentence, he does not receive the additional credit toward this sentence. TDOC has sent a letter notifying the Court about the discrepancy but an amended judgment form had not yet issued. The Court corrected the Judgement Form after the hearing.

(ECF No. 1-1, at 2.) On January 21, 2014, the court had apparently entered an Amended Judgment, reflecting that the petitioner was entitled to pretrial jail credits only from July 14, 2011 to the date of sentencing, August 21, 2011, and from the date of the original judgment until the date the amended judgment was entered, August 21, 2011 to January 21, 2014. (ECF No. 1-4, at 1.)

The petitioner asserts that he raised a claim addressing the issue of his pretrial jail credits in his initial post-conviction petition, but it was not raised by counsel in the amended petition or in the post-conviction appellate brief. It has not been ruled upon by the state appellate court. This claim therefore has not been fully exhausted in the state courts. The purported ineffective assistance of counsel does not provide cause to overcome the default of this type of claim, *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991), and the petitioner does not suggest any other possible cause for overcoming the default of this claim.

The Court also notes, however, that this claim does not directly challenge either the petitioner's conviction or sentence. Rather, it appears to concern the computation of the petitioner's sentence. Consequently, the petitioner may still have the ability to exhaust this claim in the state courts by following the procedures outlined in the state Uniform Administrative Procedures Act. The Tennessee Supreme Court has recently confirmed that this statute governs an inmate's challenge to TDOC's calculation of a release eligibility

date. *Stewart v. Schofield*, 368 S.W.3d 457, 459 (Tenn. 2012).

To the extent the claim contests the computation of the petitioner's sentence rather than the actual sentence itself, it will be dismissed without prejudice to the plaintiff's ability to further exhaust the claim and to return it to this Court once he does so. Insofar as the petitioner challenges the legality of the sentence itself, that claim is procedurally defaulted and subject to dismissal with prejudice on that basis.

### D. Illegal Sentence – Length of Sentence

It appears that the petitioner also seeks to challenge the legality of his sentence on the basis that the length of his sentence—thirty years—exceeds the maximum term he would have received if he had gone to trial and been convicted of second-degree murder. (*See* ECF No. 2, at 16–17 (arguing that his plea was not knowing and voluntary because the sentence he agreed to was illegal).) This claim is procedurally defaulted, not having been raised in the petitioner's post-conviction appeal. Moreover, it does not appear that entering into a plea agreement that included an out-of-range sentence violated either state law or federal law. The petitioner is not entitled to relief on the basis of this claim.

### E. Ineffective Assistance of Post-Conviction Counsel

The petitioner claims that he was denied effective assistance of post-conviction counsel. The freestanding claim that post-conviction counsel was ineffective is not a cognizable basis for federal habeas relief. *See Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."); *Wallace v. Sexton*, No. 13-5331, 2014 WL 2782009, at *11 (6th Cir. June 20, 2014) (same, citing *Martinez*, 132 S. Ct. at 1315); 28 U.S.C. § 2254(i) (claims alleging ineffectiveness of collateral review counsel are not cognizable habeas claims). Because the petitioner's claim does not present a cognizable basis for federal habeas review, relief is precluded by 28 U.S.C. § 2254(a).

## VI. CONCLUSION

For the reasons set forth herein, petitioner Evan Knox's petition under § 2254 will be denied and this matter dismissed.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). Under the standard articulated in *Miller-El*, the Court finds that none of the claims raised in Knox's petition merits further review. A COA will not issue.

An appropriate order is filed herewith.

_____
TODD CAMPBELL
United States District Judge